UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS A. MONTGOMERY and BETH W. MONTGOMERY,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | Civil Action No. 17-918 (JEB) |

**MEMORANDUM OPINION**

Some on the street say snitches get stitches, but in this case they become the subject of Freedom of Information Act requests. As America gears up for another tax season, Plaintiffs Thomas and Beth Montgomery are still concerned about a dispute with Defendant Internal Revenue Service stemming from the early aughts. The controversy began when the IRS adjusted certain pass-through losses Plaintiffs had claimed on their joint tax returns, deeming them the result of sham partnership deductions. The Montgomerys have since embarked on a quest to deduce who, if anyone, tipped off the Service as to the nature of the partnerships.

This FOIA case is the latest chapter in that pursuit. The Montgomerys seek twelve categories of records, which the IRS asserts either do not exist or are being withheld pursuant to a valid exemption. Before asking the Court to reach those issues, however, Defendant brings this preliminary Motion for Summary Judgment, arguing that the Montgomerys' claims are either barred by a settlement agreement between the parties or by the twin doctrines of collateral estoppel and *res judicata*. For the reasons explained below, the Court disagrees and will deny the Motion.

1

I.   **Background**

   A. Factual History

The underlying saga between the parties is largely immaterial to the Court's decision, but some recitation is nonetheless necessary to understand the dispositive issues.

In 2001 and 2002, Thomas Montgomery had a hand in the formation of several partnerships, at least two of which came under IRS scrutiny — Southgate Master Fund and Bemont Investments. The way that these two entities were set up made them "tax-friendly investment vehicle[s]." Southgate Master Fund, LLC v. United States, 659 F.3d 466, 475 (5th Cir. 2011); Bemont Invs., LLC v. United States, 2010 WL 3057437, at *6 (E.D. Tex. 2010), aff'd in part, rev'd in part, Bemont Invs., LLC v. United States, 679 F.3d 339 (5th Cir. 2012). In fact, both partnerships were structured in such a way that they were able to report tax losses without the partnerships (and, by extension, the partners) experiencing any real economic loss. See Southgate Master Fund, LLC v. United States, 651 F. Supp. 2d 596, 598 (N.D. Tex. 2009); Bemont, 679 F.3d at 347. Because of the way partnership losses are treated in the Internal Revenue Code, however, each year when the LLCs filed their returns and listed losses, Montgomery (and his wife, as a joint filer) were also able to take a loss against their individual income for the year. Like most things that seem too good to be true, the partnership-loss deductions eventually caught up with the Montgomerys.

Beginning in 2006, the IRS began issuing a series of "final partnership administrative adjustments" (FPAAs) to the Montgomerys' various partnerships covering tax years 2001 to 2010. See Bemont, 679 F.3d at 343; Southgate, 651 F. Supp. 2d at 638-39; Montgomery v. United States, No. 13-2926 (N.D. Tex.), ECF No. 1 (Complaint), ¶¶ 16-20. "An FPAA is the partnership equivalent of a statutory notice of deficiency to an individual or non-partnership

entity." Bemont, 679 F.3d at 341.  The IRS determined that the Plaintiffs' partnerships were shams and, accordingly, disallowed the losses the Montgomerys had claimed on their individual tax returns.  Id. at 341-42.

Bemont and Southgate (thorough Thomas Montgomery and other partners) subsequently brought two suits against the United States seeking readjustment of the FPAAs, but with mixed results.  In both cases, courts upheld the IRS's determination that the partnerships were a sham and that the FPAAs were thus properly issued.  Id. at 347; Southgate, 659 F.3d at 483.  In Southgate, however, the Fifth Circuit also held that the underlying business activity was "an economically substantial transaction motivated by a genuine business purpose."  659 F.3d at 483.  Based on this holding, on July 26, 2013, the Montgomerys again sued the United States, seeking a refund of taxes, interest, and penalties assessed by the IRS.  See Montgomery, No. 13-2926, Compl., ¶ 1.  Along with their Complaint, they filed a Notice of Related Cases, listing twelve suits, eleven of them pending at the time.  Id., ECF No. 3.  The court consolidated the cases and set a discovery schedule.

A few months after the close of discovery, the parties entered into a Settlement Agreement on November 6, 2014, which was expressly "intended to fully and finally resolve all ongoing disputes between [redacted], Montgomery, and the IRS related to the Southgate, Southbrook, Classic Paragon, and Pinnacle partnerships in the pending lawsuits."  MSJ, Exh. B at 2, 4-5.  The scope of this language is pivotal to resolving the current Motion, as is discussed below.  Following the Agreement, the court entered judgment for the Montgomerys, ordering the IRS to refund them $485,588 plus interest.  See Montgomery, No. 13-2926, ECF No. 35.

B. Procedural History

Having settled or litigated thirteen cases, the IRS thought it was at last clear of Plaintiffs. Wishful thinking. On May 6, 2016, the Montgomerys sent separate but virtually identical FOIA requests to the Service. See Compl., ¶¶ 16, 21; id., Exhs. A, C. The twelve requests sought two types of documents: items 1 through 5 solicited various IRS forms used when a matter involves a whistleblower or confidential informant, and items 6 through 12 asked generally for any lists, documents, or correspondence referencing the Montgomerys' tax liability or the transactions that were at issue in Southgate and Bemont. Id., ¶¶ 16, 21. On August 18, 2016, the Service sent Plaintiffs its determination, which (1) claimed FOIA exemption 7(D) for items 1 to 5 and (2) stated it had found no responsive documents for items 6 to 12. Id., Exh. E. The Montgomerys timely submitted an administrative appeal, which was denied, citing the same reasons as the August 2016 letter. Id., Exhs. F, H. Plaintiffs now bring this suit, alleging that the IRS violated FOIA and the APA by withholding the requested documents. Id., ¶¶ 60-68. The IRS, in conjunction with filing this Motion for Summary Judgment, sought to stay briefing on the merits of the claims because it believes preliminary issues dispose of the case. See ECF No. 14. The Court granted that stay, see Minute Order of Nov. 6, 2017, and the parties' briefing on these threshold issues is now ripe.

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott

v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

### III. Analysis

Defendant asserts that the Court need not reach the merits of the Montgomerys' FOIA suit because it is barred by (1) the Settlement Agreement, (2) collateral estoppel, or (3) *res judicata*. The Court evaluates each below.

#### A. Settlement Agreement

The parties' 2014 Agreement "fully and final resolve[d] all ongoing disputes" among the IRS, the Montgomerys, and their partnerships. See Agreement at 2. The question is thus whether the current FOIA suit was an "ongoing dispute" at the time of the Agreement. The Service contends that the answer is in the affirmative because the requests seek information that Plaintiffs also sought in Montgomery. See Montgomery, 13-2926, ECF No. 25 (Motion for Disclosure). The Court finds otherwise.

Settlement agreements are construed using general principles of contract law. Gonzalez v. Dep't of Labor, 609 F.3d 451, 457 (D.C. Cir. 2010); Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 188 (D.C. 2009), quoted in Electronic Privacy Info. Ctr. v. Nat'l Sec. Agency, 87 F.

Supp. 3d 223, 227 (D.D.C. 2015). The Court first determines "whether the disputed language is unambiguous"; if not, it then considers "what a reasonable person in the position of the parties would have thought the disputed language meant." Keepseagle v. Perdue, 856 F.3d 1039, 1047 (D.C. Cir. 2017) (quoting Armenian Assembly of Am., Inc. v. Cafesjian, 758 F.3d 265, 278 (D.C. Cir. 2014)).

For ease of analysis and because the IRS does not prevail here, the Court will assume to Defendant's benefit that the term "ongoing disputes" is ambiguous. Given the parties' litigation history and the totality of the Agreement, however, the Court finds that "a reasonable person in the positon of the parties" would have thought that "ongoing disputes" referred only to the thirteen cases pending at the time of the settlement. Id. First, the introductory sentence to the Agreement states that the parties "recommend the following settlement terms for <u>the above-captioned cases</u>." Agreement at 1 (emphasis added). The document then goes on to list the terms, the first one being that the "settlement is intended to fully and finally resolve all ongoing disputes between [redacted], Montgomery, and the IRS related to the Southgate, South brook, Classic Paragon, and Pinnacle partners <u>in the pending lawsuits</u>." Id. at 2 (emphasis added). Another contract term again refers to the "above-captioned cases." Id. Based on the multiple references to the thirteen cases (and no other "disputes"), the Court finds that "ongoing disputes" in the Settlement Agreement is limited to the consolidated cases in Montgomery. As Plaintiffs' FOIA suit had not yet been filed, it is not barred by the plain language of the Agreement.

Defendant nonetheless attempts to lump this case in with the resolved consolidated cases. The IRS argues that, even though the FOIA litigation had not commenced at the time, it involves issues that overlap with the consolidated cases and should thus be subsumed within the "ongoing disputes" language. Defendant points specifically to a motion for disclosure that Plaintiffs filed

6

in Montgomery. See Montgomery, 13-2926, ECF No. 25. There, they asked the court to require the Government to "disclose *in camera* whether it has paid or will pay an award or other consideration to a third party in connection" with the partnership litigation. Id. at 1. The Montgomerys believed (and likely still believe) that their partnership tax deductions unraveled because of a government informant. After the parties reached the Agreement, the court denied the motion in a summary order with no analysis. See Montgomery, 13-2926, ECF No. 36.

Neither side can plausibly deny that the FOIA requests here "primarily seek disclosure whether a confidential information tipped off the Service leading to the collapse" of the partnerships. See MTD at 17. Defendant thus argues that "this FOIA suit[,] which again seeks disclosure regarding whether any confidential information tipped off the Service[,] . . . is precluded by the mutual release that 'fully and finally' resolved all disputes" among the Montgomerys, the IRS, and the partnerships. Id. at 18. Where the IRS goes off track, however, is in conflating the underlying information that Plaintiffs seek with the device through which they are pursuing documents. Before explaining why these issues are separate, the Court notes that the motion for disclosure is a red herring because it was filed months after the Settlement Agreement was signed. Even if the motion were relevant to the parties' Agreement, then, it would still have no bearing on this case.

The Montgomerys' FOIA suit challenges the adequacy of the Government's search and withholding of certain records. Whether or not those records may reveal the existence of an informant has no bearing on the validity of the suit. "The FOIA disclosure regime . . . is distinct from civil discovery," Stonehill v. IRS, 558 F.3d 534, 538 (D.C. Cir. 2009), and a requester's motive is irrelevant to the ultimate inquiry in a FOIA case: whether the agency properly withheld records. See Chiquita Brands Int'l Inc. v. SEC, 805 F.3d 289, 294 (D.C. Cir. 2015)

("Government agencies must generally release requested records without regard to the identity or motive of the requestor."). The Service cannot try to shoehorn this action into the Settlement Agreement simply because Plaintiffs' end game is the same. This is particularly true where the motion for disclosure was not a request for documents under Federal Rule of Civil Procedure 34, which might arguably be more akin to a FOIA request. See Montgomery, No. 13-2926, Mot. for Disclosure at 8-13 (request for Government to produce 30(b)(6) witness to testify regarding informant).

Finally, Defendant's reliance on cases where a mutual release barred a subsequent FOIA suit are inapposite. See MTD at 16. For example, in Public Employees for Environmental Responsibility v. EPA, 926 F. Supp. 2d 48 (D.D.C. 2013), the plaintiff had "agreed not to file any new appeal, complaint, grievance, claim, or civil action against EPA concerning any incidents, personnel actions, Agency decisions or determinations, or terms or conditions of employment prior to January 31, 2012." Id. at 52 (internal citation and quotation marks omitted). His FOIA suit based on a request submitted on December 19, 2011, then, clearly fell within the agreement's proscription. Id. at 54. Likewise, in Rogers v. IRS, 822 F.3d 854 (6th Cir. 2016), the Service and a plaintiff resolved a forfeiture action through a settlement agreement that included a clause barring the plaintiff from bringing "future claims related to and/or in connection with or arising out of the forfeiture actions." Id. at 856 (internal quotation marks and citation omitted). When he subsequently brought suit challenging the IRS's denial of requested records related to the forfeiture actions, the court had little trouble finding that the "FOIA suit fit[] within the release provision." Rogers v. IRS, 2015 WL 881514, at *4 (S.D. Ohio Mar. 2, 2015).

The parties' Agreement here, which only references "all ongoing disputes," is a far cry from the broad releases in PEER and Rogers. When interpreting a settlement agreement, a "court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the [settlement agreement]." JSC Transmashholding v. Miller, 264 F. Supp. 3d 201, 204 (D.D.C. 2017) (alteration in original) (citation omitted). Particularly where, as here, two sophisticated parties negotiated the terms, the Court will not look beyond the language to deduce their intent. See, e.g., Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1284 (5th Cir. 1989). As Rogers shows, the IRS knows how to negotiate a settlement agreement to release itself from all claims, present, past, and future. It did not do so here.

B. Collateral Estoppel

Next up is collateral estoppel, or issue preclusion, which prevents a party from bringing a suit on an issue that has been previously decided. For the doctrine to apply, there must have been prior litigation (1) with the same parties; (2) involving the same or a substantially similar issue; that was (3) "actually and necessarily determined" by a prior court. Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992); see Menoken v. McGettigan, 2017 WL 3479048, at *6 (D.D.C. Aug. 11, 2017) (issue need not be identical but must be "substantially the same as the issue previously litigated") (citation omitted). The Government argues that Southgate, Bemont, and Montgomery preclude this litigation. The Court disagrees, as the issues are not "substantially similar." Bryson v. Gere, 268 F. Supp. 2d 46, 57 (D.D.C. 2003).

The previously litigated issue, according to the IRS, is whether a confidential informant led to the FPAA notices. Defendant, citing the extensive discovery efforts of the Montgomerys in the prior cases, argues that they are estopped from relitigating that issue now. See Reply 10-14. Yet, the Service never alleges that Plaintiffs' there asked for, and were denied, access to the

records that they seek here. As discussed above, their access to records, not what those records may detail, is the relevant question here. Cf. Chiquita Brands, 805 F.3d at 294; Gonzalez-Lora v. DOJ, 169 F. Supp. 3d 46, 53 (D.D.C. 2016) (collateral estoppel barred plaintiff's Privacy Act claims that "pertained to his demand for records from the DEA under the FOIA" because "[b]oth cases arise from the same nucleus of facts"); Nat'l Treasury Emps. Union v. IRS, 765 F.2d 1174, 1175 (D.C. Cir. 1985) (second FOIA suit seeking same documents but for years different from previous FOIA litigation barred by collateral estoppel). Further, even if it were the Service's position that the Montgomerys have had their day in court with respect to the specific records requested here, the adequacy of the search and the validity of the exemptions have never been determined by a court. Issue preclusion thus does not apply.

    C. *Res Judicata*

Similarly unsuccessful is the Government's reliance on *res judicata*. This doctrine, also known as claim preclusion, "precludes the parties or their privies from relitigating issues that were or could have been raised in" a previous action where a final judgment has been entered on the merits. Allen v. McCurry, 449 U.S. 90, 94 (1980). To successfully invoke *res judicata*, a party must establish that there has been "a final, valid judgment on the merits . . . between the same parties on the same cause of action." Stanton v. Dist. of Columbia Ct. of App., 127 F.3d 72, 78 (D.C. Cir. 1997). The parties here disagree as to whether the claims could have been brought in prior litigation and whether such litigation and this FOIA suit are the "same cause of action."

Plaintiffs argue that they could not have included their FOIA claim in any of the prior proceedings because they did not file the request until May 2016, five months after the court entered judgment in Montgomery. See Surreply at 7. To the Service, this rings hollow because

10

they could have acted earlier, as they "suspected as early as Fall 2006 that an informant" was involved in the partnership cases. See Reply at 10. The Court need not decide the matter, however, because the Government's *res judicata* argument founders on a more basic ground: this FOIA suit and the previous litigation do not share a cause of action.

In its broadest sense, "cause of action" includes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action rose." Restatement (Second) of Judgments, § 24 (1982); Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984) (interpreting "cause of action" to mean any two actions that have the same "nucleus of facts"). The IRS urges that the Montgomerys' FOIA claim arises from the same nucleus of facts as the previous litigation. See North v. Walsh, 881 F.2d 1088, 1092-93 (D.C. Cir. 1989) ("assuming *arguendo*" that plaintiff's "demand for documents under FOIA and his subpoena for the same documents during the grand jury proceeding comprise the same 'claim'"). But, here again, the IRS confuses the assumed purpose for the request with the FOIA claim itself. FOIA "confers a right on any person to receive [requested] records" subject to applicable exemptions. Feinman v. FBI, 680 F. Supp. 2d 169, 173 (D.D.C. 2010) (quoting Halperin v. CIA, 629 F.2d 144, 153 (D.C. Cir. 1980)). Whether the IRS "properly searched for and disclosed records to Plaintiff[s] in response to a FOIA request simply has nothing to do" with whether the Montgomerys took valid deductions in relation to their partnerships or even whether an informant blew the whistle on them. Abuhouran v. Nicklin, 764 F. Supp. 2d 130, 133 (D.D.C. 2011) (separating FOIA claim against agency from constitutional claims as misjoined). The "nucleus of facts," Page, 729 F.2d at 820, that the Court will need to consider in adjudicating Plaintiffs' FOIA claim — *i.e.*, whether the IRS's search was adequate and its claimed exemptions appropriate — is wholly different from what the previous

courts assessed — namely, the Montgomerys' correct tax liability.  The present suit is, therefore, not barred by *res judicata*.

## IV. Conclusion

As none of the IRS's threshold claims holds water, the Court will deny Defendant's Motion for Summary Judgment.  An Order so stating shall be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 20, 2018