UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS MONTGOMERY and
BETH MONTGOMERY,

Plaintiffs,

v.

INTERNAL REVENUE SERVICE,

Defendant.

Civil Action No. 17-918 (JEB)

**MEMORANDUM OPINION**

Over a decade ago, Defendant Internal Revenue Service determined that Plaintiffs Thomas and Beth Montgomery were involved in a multi-billion-dollar tax-shelter scheme. Suspecting that an insider had blown the whistle on their sham partnerships, the couple requested several categories of IRS records under the Freedom of Information Act. After coming up short, Plaintiffs filed this action asserting causes of action under FOIA and the Administrative Procedure Act. In this second round of briefing, each party seeks summary judgment on both counts. Finding merit on each side, the Court will grant in part and deny in part both Motions.

**I.  Background**

Like some FOIA cases, this dispute stretches back much farther than the records requests at issue. The Court detailed the underlying saga between these two parties in a prior Opinion, see Montgomery v. IRS, 292 F. Supp. 3d 391, 393-94 (D.D.C. 2018), but provides a brief recap here. In the early aughts, Thomas Montgomery formed several partnerships, from which he and his wife as joint-filer recorded losses on their individual tax returns. A few years later, the IRS became suspicious of these entities because they were reporting tax losses without experiencing

1

any real economic loss. After an investigation, they were eventually deemed shams, meaning that the Montgomerys were retroactively disallowed from taking the losses from the partnerships on their individual returns and owed payments for tax, penalties, and interest. Id. In thirteen separate federal suits in Texas, Plaintiffs and the partnerships petitioned the Government for, respectively, tax refunds and readjustment of partnership income. Before all of these actions could be judicially resolved, the Montgomerys and the IRS entered into a global settlement agreement, promising to "fully and finally resolve all ongoing disputes between [them] related to" the partnerships. Id. at 394 (citation omitted).

Although one might believe that would have ended the matter, Plaintiffs were not yet finished. Having settled the tax issues, they then turned their attention to figuring out how they had crossed the IRS's path to begin with. To that end, they each submitted FOIA requests for twelve types of records. Requests 1 through 5 solicited various IRS forms used in connection with a whistleblower, and 6 through 12 requested lists, documents, or correspondence between the IRS and any third party regarding Plaintiffs' potential tax liability or partnership transactions. See Complaint, ¶ 16. The Service rejoined that it had "found no documents specifically responsive to [the] request[s] in response to the items 6 through 12" and claimed that FOIA Exemption 7(D) "exempts the disclosure of records" sought in items 1 through 5. Id., Exh. E at 3. After Plaintiffs' administrative appeal was denied for the same reasons, id., Exh. H, they filed the instant action on May 16, 2017, seeking relief under FOIA and the APA.

Five months later, the Service moved for summary judgment on procedural grounds. It argued that the global settlement agreement barred further litigation or, alternatively, that the Montgomerys were precluded from bringing their claims based on the resolution of the prior district court cases. The Court rejected both strands of that argument, clearing the way for this

2

merits briefing.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment, and the agency bears the ultimate burden of proof. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III. Analysis

In considering the competing Motions, the Court first evaluates Plaintiffs' FOIA claims before turning to their APA count.

A. FOIA

The Montgomerys' first count is based on their requests for twelve types of records, which can be divided into two groups: agency forms related to a confidential informant (requests 1 through 5) and documents and correspondence between a third party and the Service about the Plaintiffs or their partnerships (requests 6 through 12). Although it did not plainly do so in the administrative proceedings, the IRS has now asserted a so-called Glomar response, in which it refuses to confirm or deny whether the first collection of records exists. It also contends that it conducted an adequate search for the second group. The Court takes each in turn.

1. *Glomar* Response

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. Id. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

In certain circumstances, however, an agency may refuse to confirm or deny that it has relevant records. This "Glomar response" derives from a ship, the *Hughes Glomar Explorer*, about which the CIA refused to confirm or deny the existence of records. See Phillippi v. CIA,

546 F.2d 1009, 1011 (D.C. Cir. 1976). Such responses are appropriate only when "'confirming or denying the existence of records would' itself reveal protected information." Bartko v. DOJ, 62 F. Supp. 3d 134, 141 (D.D.C. 2014) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995)). Although a judicial, not statutory, creation, the agency must nonetheless "tether its refusal to respond . . . to one of the nine FOIA exemptions." Wilner v. NSA, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotation marks and citation omitted). When evaluating the Government's proffered justification, the focus is not on "the actual content of the documents but on whether the potential harm created by revealing the existence of the documents is protected by [the] FOIA exemption." Parker v. DOJ Exec. Off. for U.S. Attys, 852 F. Supp. 2d 1, 10 (D.D.C. 2012). In conducting their review, "courts apply the general exemption review standards established in non-Glomar cases," Leopold v. DOJ, 301 F. Supp. 3d 13, 28 (D.D.C. 2018) (quoting Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007)), and the agency may support its position through reasonably detailed affidavits that are "not controverted by either contrary evidence in the record or bad faith." Wolf, 473 F.3d at 374 (citation omitted). So long as the agency's justifications appear "logical or plausible," id. at 375, courts should accord them "substantial weight." Gardels v. CIA, 689 F.2d 1100, 1104 (D.C. Cir. 1982).

Plaintiffs lob two threshold arguments against the Service's Glomar response. First, they contend that it is estopped from relying on the doctrine because a prior court held that there was no informant. See Pl. Reply at 6. In addition, they posit that because the Government previously admitted the contrary during the administrative process, it has waived any reliance on Glomar. The Court looks at both issues and then moves to the merits.

a. Estoppel

The Montgomerys first argue that the IRS is estopped from invoking Glomar for their requests regarding a confidential informant because in prior litigation the Service asserted — and a court found — that there was no informant. See Pl. Opp. at 14-15. Yet, as even the Montgomerys admit, the existence of records and the existence of an informant are not the same thing. See Pl. Reply at 7 ("[I]t is entirely possible that responsive records exist and yet there was no confidential source relied upon previously by Defendant.").

The requested forms include: 1) 211, Application for Award for Original Information; 2) 211A, State or Local Law Enforcement Application for Reimbursement for Original Information; 3) 3949-A, Information Referral; 4) 11369, Confidential Evaluation Report on Claim for Award; and 5) 13976, Itemized Statement Component of Advisee List. With the exception of Form 11369, these forms are all generated by people outside of the IRS, meaning they provide no conclusive evidence as to whether Defendant relied upon a confidential informant. For example, someone could submit a Form 211 about a taxpayer that, upon investigation, proves inaccurate or unworthy of follow-up. Similarly, the form could be submitted for a taxpayer already on the IRS's radar, possibly rendering the whistleblower superfluous. Although in both cases no award would be issued and the applicant would not become a confidential informant, the record of the form would nonetheless exist. The forms requested by the Montgomerys, therefore, would only provide information as to whether someone attempted to become a confidential informant, not whether anyone ever actually fulfilled that role. Plaintiffs' estoppel argument thus fails because it is tethered to prior statements that there was no confidential informant, but that does not mean that no records exist.

b.  Official Acknowledgment

Plaintiffs fare no better on their next contention that the Service waived a Glomar response by officially acknowledging that records do exist.  While it is true that a plaintiff "can overcome a Glomar response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records," to do so he must "point[] to specific information in the public domain that appears to duplicate that being withheld."  ACLU v. CIA, 710 F.3d 422, 426-27 (D.C. Cir. 2013) (citation omitted).  A general or vague acknowledgment is not enough; rather, the plaintiff must "pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency."  Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011).

Defendant did not assert Glomar during the administrative process.  When the Montgomerys appealed the initial denial, the Agency invoked, *inter alia*, Exemption 7(D), stating that "[t]he withheld material contains information which could reasonably be expected to directly or indirectly disclose the identity of confidential sources and which was provided by the confidential information sources in the course of a criminal investigation.  Thus, this material is exempted from mandatory disclosure."  Compl., Exh H at 3.  Plaintiffs argue that the phrases "withheld material" and "this material" amounts to an official acknowledgment that records do exist, destroying any Glomar reliance.  The Government responds that this was a clerical error, noting that it "mistakenly used standard form language in [its] letters responding to [Plaintiffs'] FOIA administrative appeal."  Def. Reply at 21.

Although the Court finds the Service's error unfortunate, it does not amount to an official acknowledgement.  It would be draconian to penalize the Government in a sensitive matter concerning a potential informant by refusing to permit some leeway for an honest mistake.  In

7

addition, the administrative letter merely noted that Exemption 7(D) "is applicable in this matter." Compl., Exh. H at 3. Even if the Court were to find that the letter acknowledged the existence of <u>some</u> records, its reference to "withheld" or "exempted" material does not specify which of the five requests it refers to and thus does not rise to the level of an official acknowledgement. Simply put, Defendant's careless phrasing does not "match the information" requested. See <u>ACLU v. DOD</u>, 628 F.3d 612, 620 (D.C. Cir. 2011) (agency did not waive <u>Glomar</u> response to records about specific detainees by disclosing memoranda containing generic interrogation techniques).

        c.   Merits

Moving then to the merits, the IRS here asserts <u>Glomar</u> for Plaintiffs' requests 1 through 5, claiming that the existence or non-existence of records relating to a confidential informant are exempt under Exemptions 7(D), 7(E), and 3. Finding that the Service may rely on the first, the Court does not address the remaining two.

Exemption 7(D) excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis." 5 U.S.C § 552(b)(7)(D). The threshold question, then, is whether any records would have been compiled for law-enforcement purposes. Plaintiffs do not dispute that the requested records (if they exist) meet this requirement; the Court likewise finds that the Government easily clears that hurdle here, as any records would have related to its investigation into the tax shelters. See <u>Sea Shepherd Conservation Society v. IRS</u>, 208 F. Supp. 3d 58, 80-81 (D.D.C. 2016) (records from informants and created during IRS's examination of informants' complaints are "compiled for a law enforcement purpose").

8

The Montgomerys do, however, challenge the IRS's ability to meet the other requirements of 7(D) — namely, that the information is exempt because it could identify a confidential source who furnished information on a confidential basis. Plaintiffs are correct that the exemption's focus is not on "whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." DOJ v. Landano, 508 U.S. 165, 172 (1993). In a typical FOIA case, the exemption is thus properly invoked only where a source provided information based upon an express grant of confidentiality or "in circumstances from which such an assurance could reasonably be inferred." Id. (quoting S. Rep. No. 93-1200, at 13 (1974)). There is no presumption that all sources meet this test simply because they speak to law enforcement, but an agency may point to certain indicia to show an expectation of confidentiality. Id. at 179. These include "the character of the" infraction, "the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed." Roth v. DOJ, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting Landano, 508 U.S. at 179) (internal quotation marks omitted).

The difficulty here is that if the Government describes its interactions with a specific source, it would thereby undercut the protection that Glomar provides. In other words, because a Glomar response is meant to obscure the very existence of the source (or attempted source), the Government cannot offer any public statement concerning the confidentiality assurances given to that source (or a statement that no source exists). As the Service persuasively argues, even though the identity of an informant may not be at risk in every case, to protect whistleblowers in

9

cases where disclosure of the existence of records could lead to their identification, it must assert Glomar whenever an informant is involved.

For example, in a situation where there is only one suspected whistleblower, the Service's affirmative or negative response to a request for certain forms would either confirm or refute the suspicion. Either the documents exist, in which case the identity of the informant could be apparent even if the IRS does not release anything, or they do not. Even though the non-existence of records does not implicate a harm cognizable under Exemption 7(D), the IRS can only protect against the damage that confirming such records would engender by asserting Glomar in all situations. This is also true in circumstances where there is someone who attempted to be a source but whose information was ultimately not utilized, as discussed above in the Estoppel section.

That does not mean, however, that Defendant can categorically refuse a FOIA request for all forms related to a confidential or prospective informant without any judicial review. Rather, it must "publicly explain[] to the extent it can why" the exemption is applicable and "then rely[] on *in camera* judicial review to confirm its conclusions." Roth, 642 F.3d at 1185. Here, the Government's public declarations detail its policy to issue a Glomar response when a requester seeks records pertaining to a confidential informant in order to protect the identity of whistleblowers. See Def. MSJ, Attach. 6 (Declaration of Amy Mielke), ¶ 13. As described above, if the IRS does not consistently invoke Glomar, "requesters will soon be able to determine when [it] is protecting records and when there are no records to protect." Id. A savvy requester could then "determine whether a confidential informant exists," which in some cases "could result in the disclosure of the identity of the confidential informant." Id. Defendant's *in camera* submissions thus must state either 1) that records do exist and that it either has given an

cases where disclosure of the existence of records could lead to their identification, it must assert Glomar whenever an informant is involved.

For example, in a situation where there is only one suspected whistleblower, the Service's affirmative or negative response to a request for certain forms would either confirm or refute the suspicion. Either the documents exist, in which case the identity of the informant could be apparent even if the IRS does not release anything, or they do not. Even though the non-existence of records does not implicate a harm cognizable under Exemption 7(D), the IRS can only protect against the damage that confirming such records would engender by asserting Glomar in all situations. This is also true in circumstances where there is someone who attempted to be a source but whose information was ultimately not utilized, as discussed above in the Estoppel section.

That does not mean, however, that Defendant can categorically refuse a FOIA request for all forms related to a confidential or prospective informant without any judicial review. Rather, it must "publicly explain[] to the extent it can why" the exemption is applicable and "then rely[] on *in camera* judicial review to confirm its conclusions." Roth, 642 F.3d at 1185. Here, the Government's public declarations detail its policy to issue a Glomar response when a requester seeks records pertaining to a confidential informant in order to protect the identity of whistleblowers. See Def. MSJ, Attach. 6 (Declaration of Amy Mielke), ¶ 13. As described above, if the IRS does not consistently invoke Glomar, "requesters will soon be able to determine when [it] is protecting records and when there are no records to protect." Id. A savvy requester could then "determine whether a confidential informant exists," which in some cases "could result in the disclosure of the identity of the confidential informant." Id. Defendant's *in camera* submissions thus must state either 1) that records do exist and that it either has given an

express grant of confidentiality or satisfied the Roth factors to show an implicit grant; or 2) that no documents exist. The Court has reviewed the *in camera* declarations here and finds that the Service has satisfied one of these two requirements. It accordingly grants Defendant summary judgment on the Montgomerys' requests 1 through 5.

  2. *Adequacy of Search*

The parties also move for summary judgment on the adequacy of the search for items 6 through 12 of the Montgomerys' requests. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to

the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

Items 6-12 ask for various records created or received by the IRS pertaining to the partnerships or to Plaintiffs. In support of its Motion, the Service submitted declarations averring that it had searched the Integrated Data Retrieval System (IDRS), its "overarching . . . computer interface that supports IRS employees across IRS's operating units." Def. MSJ, Attach. 5 (Declaration of Pamela Sharisse Tompkins), ¶ 15. The IDRS search did not contain "any criminal investigation indicators" so the IRS did not search its Criminal Investigation Management Information System (CIMIS) to check for any responsive records. Id., Attach. 4 (Declaration of Patricia Williams), ¶ 7. It did, however, turn up an "exam file," which "contain[s] an organization or individual's account and financial information." for each of the requested partnerships and individuals. Id., ¶ 10. After reviewing the exam files, the Service did not find any records responsive to Plaintiffs' requests 6-12.

The Montgomerys assert that this search was not adequate because Defendant should have also searched CIMIS, IRS Whistleblower Office databases, and litigation files from the Bemont and Southgate cases. See Pl. MSJ at 36. As to the first, the IRS's declaration satisfactorily states why it did not search CIMIS. IDRS did not return any indicators of a criminal investigation so CIMIS was not "likely to turn up the information requested." Oglesby, 920 F.2d at 68. As to the last two, the Government offers no real defense, contending only in its Reply that it should not have to search these places "for records unrelated to a whistleblower." Def. Reply at 35. Yet, it is entirely plausible that previous litigation files might contain information unrelated to a confidential informant but responsive to Plaintiffs' requests. And even if the Whistleblower Office was not a likely place to search for the records, the Government

12

must "[a]t the very least . . . explain in its affidavit that no other record system was likely to produce responsive documents." Oglesby, 920 F.2d at 68. Because the IRS has failed to do so here, either in public or *in camera*, summary judgment is not appropriate. It must therefore renew its search or aver that its prior searches were "reasonably calculated to uncover all relevant documents." Id.

    B.  APA

Plaintiffs last assert that the IRS's failure to provide records relating to confidential informants violates the APA. In moving for summary judgment, the Service contends that no APA claim lies here since FOIA provides an adequate remedy.

Although the APA was enacted to "provid[e] a broad spectrum of judicial review of agency action," Bowen v. Massachusetts, 487 U.S. 879, 903 (1988), such review is only permissible if "there is no other adequate remedy" at law. See 5 U.S.C. § 704. An adequate remedy does not mean identical relief or even that relief is possible for a particular plaintiff; it is enough that a separate "statute provides an independent cause of action." Feinman v. FBI, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (quoting El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS, 396 F.3d 1265, 1270 (D.C. Cir. 2005)).

In their summary-judgment briefing, Plaintiffs attempt to style their APA claim as a challenge to the Service's Glomar policy, which it characterizes as "a disguised legislative rule" that should have gone through notice-and-comment procedures. See Pl. Reply at 22. Creative an argument as that may be, it still does not bring them within the ambit of the APA. FOIA provides that an agency "shall" make records available to a requester unless certain exceptions apply and gives courts "jurisdiction to . . . order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). If the Court were to conclude that the Service did have an

13

impermissible policy, it could order disclosure of the records, thereby providing the Montgomerys with the same relief via their FOIA count. In other words, "the equitable remedies available to [them] under FOIA would provide the same relief from the alleged polices as would the APA." Feinman, 713 F. Supp. 2d at 77 (APA challenge to agency policies precluded by FOIA). Because FOIA provides an adequate remedy for Plaintiffs' grievance, APA review is precluded. The IRS is thus entitled to summary judgment on Count II.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to requests 1 through 5 for Count I and in full for Count II. It will grant Plaintiffs' Cross-Motion as to the adequacy of the search for requests 6 through 12. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 6, 2018