UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS MONTGOMERY and
BETH MONTGOMERY,

Plaintiffs,

v.

INTERNAL REVENUE SERVICE,

Defendant.

Civil Action No. 17-918 (JEB)

## MEMORANDUM OPINION

In a September 6, 2018, Opinion, this Court granted Defendant Internal Revenue Service's Motion for Summary Judgment as to certain Freedom of Information Act requests made by Plaintiffs Thomas and Beth Montgomery. In now seeking reconsideration, Plaintiffs argue that the Court misstated certain facts, improperly relied on *in camera* declarations, and misconstrued the scope of a FOIA exemption. As none of their objections calls the prior Opinion into question, the Court denies the Motion.

**I.     Background**

The Court has recounted the facts underlying this suit in several previous Opinions, see, e.g., Montgomery v. IRS, 292 F. Supp. 3d 391, 393–94 (D.D.C. 2018), so just a brief summary will do. In the mid-2000s, the IRS disallowed certain tax losses and issued certain tax penalties against several partnerships associated with the Montgomerys. See Bemont Invests., LLC *ex. rel.* Tax Matters Partner v. United States, 679 F.3d 339, 341–42 (5th Cir. 2012), abrogated by United States v. Woods, 571 U.S. 31 (2013). After several years of subsequent litigation, the parties reached a global settlement agreement. See ECF No. 13 (First MSJ), Exh. B (Global

Settlement) at 2, 4–5.  This did not end the war, however, as the Mongtomerys then filed a number of FOIA requests aimed at gathering information about how they might have originally come to the IRS's attention.  See ECF No. 1 (Compl.), Exh. A (FOIA Request) at 1–2.  At issue here are five of those requests, which seek forms the IRS may have in its possession in connection with whistleblower activity related to the Montgomerys.  Id.  Defendant eventually issued a Glomar response as to those requests, refusing to confirm or deny the existence of responsive records.  It based that response on a number of FOIA exemptions including Exemption 7(D), which protects information that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D).  Dissatisfied with that response, the Montgomerys filed this suit.

After an initial round of briefing on several procedural issues, the parties filed cross-motions for summary judgment.  The Court rendered a mixed verdict, siding with Defendant as to the five requests at issue here and with Plaintiffs as to the others.  While the Court required the IRS to conduct a further search on the latter group of requests — a process now underway — it agreed with the Service that disclosure of the existence of records responsive to the first five requests under these circumstances could, as a general matter, be reasonably expected to reveal the identity of a confidential source.  The Glomar response based on Exemption 7(D) was thus appropriate.  The Court rejected Plaintiffs' arguments that the Service's past litigating positions or public statements were inconsistent with its current position.  See Montgomery v. IRS, 330 F. Supp. 3d 161, 168–70 (D.D.C. 2018).  This Motion to Reconsider followed.

**II.     Legal Standard**

"The Federal Rules of Civil Procedure do not specifically address motions for reconsideration," United States v. All Assets Held at Bank Julius, Baer & Co., Ltd., 315 F. Supp.

3d 90, 95 (D.D.C. 2018), but Rule 54(b) allows a court to revise any interlocutory "order . . . at any time before the entry of a judgment." While the judicial interest in finality typically disfavors reconsideration, a court may do so "as justice requires." Wannall v. Honeywell Int'l, Inc., 292 F.R.D. 26, 30 (D.D.C. 2013) (citation omitted). This standard is flexible and allows a district court to exercise broad discretion, but there must be some "good reason" to reconsider an issue already litigated by the parties and decided by the court, such as new information, a misunderstanding, or a clear error. See Bank Julius, 315 F. Supp. 3d at 96; Alliance of Artists & Recording Cos., Inc. v. Gen. Motors Co., 306 F. Supp. 3d 413, 415–16 (D.D.C. 2016); Estate of Klieman v. Palestenian Auth., 82 F. Supp. 3d 237, 242 (D.D.C. 2015) (stating that district court has broad discretion to decide whether to grant motion for reconsideration). "Ultimately, the moving party has the burden to demonstrate 'that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.'" Bank Julius, 315 F. Supp. 3d at 96 (quoting FBME Bank Ltd. v. Mnuchin, 249 F. Supp. 3d 215, 222 (D.D.C. 2017)).

**III. Analysis**

The Court understands Plaintiffs to offer three general bases to reconsider its prior Opinion: (A) the Opinion misstates facts; (B) it improperly relies on *in camera* declarations; and (C) it improperly upheld Defendant's Glomar response based on FOIA Exemption 7(D). Each concern is addressed in turn.

A. Facts

The Montgomerys first take issue with the Court's description of the factual background of the case. In particular, they say the Opinion wrongly stated that they owed penalties to the IRS as a result of their role in several businesses subject to IRS enforcement proceedings. See ECF No. 51 (Mot.) at 8 (citing Montgomery, 330 F. Supp. 3d at 166). To the extent the Court

may have improperly characterized the Montgomerys' personal income-tax history from the morass of factual disputes that marked the parties' prior litigation, this had no effect on its decision upholding the IRS's response to several of their FOIA requests. Reconsideration on this ground is thus unnecessary. See Stewart v. FCC, 189 F. Supp. 3d 170, 173 (D.D.C. 2016) (reconsideration based on alleged factual error necessary only if court failed to consider "data that might reasonably be expected to alter the conclusion reached by the Court") (citation omitted).

Plaintiffs themselves point to no nexus between these statements and the Court's analysis of the FOIA issues in this case. They instead appear to rely on more general allegations that the Court is somehow prejudiced against them. See Mot. at 2. Such assertions are not well founded. Recall that in the most recent round of briefing, the Court sided with the Montgomerys as to more than half of their requests; in the previous procedural round, it sided with them in whole. See Montgomery, 292 F. Supp. 3d 391. Today, furthermore, it has issued an Order granting Plaintiffs' most recent motion challenging the sufficiency of the Government's search for responsive records. See ECF No. 62. How those decisions, which are equally related — or, more accurately, equally unrelated — to the statements Plaintiffs mention, fit with their allegation of prejudice here is unclear. In any event, this complaint does not warrant reconsideration.

B. *In Camera* Declarations

Next up is Plaintiffs' argument that the Opinion improperly relied on *in camera* declarations. The IRS did submit declarations or portions of declarations for *in camera* review in support of its withholdings. See ECF No. 31 (Def. Second MSJ), Attach. 4 (Declaration of Patricia Williams). The Court then referenced those materials when explaining that the agency

4

had met its burden of justifying its Glomar response based on Exemption 7(D). See Montgomery, 330 F. Supp. 3d at 170–71. The Montgomerys offer three objections to these declarations, none of which justifies reconsideration.

The first is that such declarations are not appropriate in a FOIA case involving Exemption 7(D). See Mot. at 6–7. But courts have expressly sanctioned the use of such declarations where "no additional information . . . may be publicly disclosed without revealing precisely the information that the agency seeks to withhold." Barnard v. DHS, 598 F. Supp. 2d 1, 16 (D.D.C. 2009); see also Life Extension Found., Inc. v. IRS, 915 F. Supp. 2d 174, 185–86 (D.D.C. 2013) (relying on *in camera* declarations to uphold withholding under Exemption 7(D)). As the Court explained, an agency's Glomar response based on Exemption 7(D) can be just such a situation:

> The difficulty here is that if the Government describes its interactions with a specific source, it would thereby undercut the protection that Glomar provides. In other words, because a Glomar response is meant to obscure the very existence of the source (or attempted source), the Government cannot offer any public statement concerning the confidentiality assurances given to that source (or a statement that no source exists). As the Service persuasively argues, even though the identity of an informant may not be at risk in every case, to protect whistleblowers in cases where disclosure of the existence of records could lead to their identification, it must assert Glomar whenever an informant is involved.

Montgomery, 330 F. Supp. 3d at 170–71. In such circumstances, the agency must still explain in a public declaration why, as a general matter, the information requested would reveal the identity of a confidential source if one existed. For example, if the purported source were part of an agency's whistleblower program, as in this case, it is required to explain publicly that such sources are given assurances of confidentiality. But that's not all. The agency must also explain whether such records in fact exist, and, if they do, why disclosure of their existence would reveal

5

the identity of a specific confidential source in this case. Id. at 171. Where that very explanation may reveal information protected by a FOIA exemption, like here, it can be provided to the Court via *in camera* declarations and paired with a Glomar response.

*In camera* declarations, properly understood, thus safeguard plaintiffs' rights to government records, at least in this context. Were the Court, as Plaintiffs wish, to refuse to grant Defendant leave to file declarations *in camera* and responsive documents were to exist, the Court could not confirm that the records' disclosure would in fact implicate a FOIA exemption — *viz.*, that disclosure would compromise the identity of a specific source for whom the agency "either has given an express grant of confidentiality or satisfied the Roth factors to show an implicit grant" of confidentiality. Id. It would simply have to take the Government at its word that this is the case. By reviewing such *in camera* materials, conversely, the Court can closely evaluate the Government's reasoning and then order as much of the materials released as is consistent with the exemption the agency has invoked. See Roth v. Dep't of Justice, 642 F.3d 1161, 1185 (D.C. Cir. 2011). Such a procedure is assuredly second best to a full-throated debate about the specific records in question. But that is why such declarations may be relied on only in the rare circumstance, like here, where such debate would "reveal[] precisely the information that the agency seeks to withhold." Life Extension, 915 F. Supp. 2d at 186 (citation omitted).

The second objection to the Court's consideration of *in camera* declarations is that they should not be believed given that "Defendant's track record with Plaintiffs is marked by fundamental dishonesty and contradictions." Mot. at 7. Of course, this complaint applies as much to public declarations as *in camera* ones. To the extent Plaintiffs think any declaration must be entirely public because of the agency's alleged misconduct, the Court disagrees. It has

not observed here the sort of bad-faith conduct Plaintiffs allege the IRS committed several years ago and has seen nothing to make it question the veracity of the declarations in this case.

The Montgomerys last assert that consideration of these declarations is "contrary to the Court's Minute Order of April 26, 2018[,] in which the Court stated that, '[t]o the extent the Court considers any *ex parte* materials, it will ensure that Plaintiffs are given an opportunity to be heard such that they are not thereby prejudiced." Mot. at 1. Not so. Plaintiffs have now filed three sets of briefs addressing this matter — their opposition to the Government's request to file these declarations, their cross-motion for summary judgment and opposition to the Government's motion, and this Motion for Reconsideration. They have voiced their concerns about the declarations and the Court has heard — and rejected — them.

Having considered this briefing, the Court has done much of what Plaintiffs themselves requested and all of what this Circuit requires. "[A]fter reviewing the declarations submitted by Defendant," the Court has "ma[d]e available" to Plaintiffs "as much as possible of [any such] *in camera* submission[s]." ECF No. 33 (Mot. for Leave to File Opposition) at 10 (citation omitted). That is to say, none of the *in camera* submissions could be released without compromising information protected by Exemption 7(D). That conclusion coheres with the Circuit's approach to such materials. See Arieff v. U.S. Dep't of Navy, 712 F.2d 1462, 1470–71 (D.C. Cir. 1983) (holding that consideration of *ex parte* affidavits appropriate where "(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted"); Life Extension, 915 F. Supp. 2d at 185–86 (upholding agency withholding under Exemption 7(D) based on *in camera* declarations); Barnard, 598 F. Supp. 2d at 16 n.10 (declining to make available any portion of defendant's *in*

7

*camera* submissions because "no portion of the declarations may be disclosed without revealing the information Defendant seeks to protect").

C. Glomar and Exemption 7(D)

In addition to the aforementioned largely procedural issues, Plaintiffs also maintain that the Court's decision upholding the agency's Glomar response based on Exemption 7(D) is substantively wrong. In so arguing, they make many of the same points they raised the first time around. The Court runs through them again, clarifying why the agency's response was legally satisfactory.

1. *Official Acknowledgement*

The Montgomerys root their first set of objections in a species of waiver doctrine known as "official acknowledgement." See Mot. at 9–12. Under that doctrine, an agency may be barred from asserting Glomar or a FOIA exemption if doing so would be irreconcilable with its previous official statements. See Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007). Plaintiffs argue that this is the case here, as the IRS's past statements have waived its right to assert both Glomar and Exemption 7(D). Take the Glomar-waiver argument first. An agency waives Glomar under this doctrine when it has officially acknowledged the existence (or nonexistence) of responsive documents. "[T]o overcome an agency's Glomar response when relying on an official acknowledgement, 'the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency.'" James Madison Project v. Dep't of Justice, 302 F. Supp. 3d 12, 21 (D.D.C. 2018) (quoting Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011)).

As the Court has explained before, Plaintiffs have not met this standard. The IRS's prior statements about the absence of a confidential informant in the Montgomerys' tax case,

8

discussed in greater depth below, do not mean there were no responsive documents. See Montgomery, 330 F. Supp. 3d at 168–69. Neither did the Service's clerical error during the administrative process — apparently recognizing the existence of documents — constitute an official acknowledgement. Id. at 169; see also Mobley v. CIA, 806 F.3d 568, 584 (D.C. Cir. 2015) (holding that "simple clerical mistake in FOIA processing" is not official acknowledgement). The agency's general ability to assert Glomar therefore remains intact.

That leaves the Montgomerys' second official-acknowledgement argument: that the agency has officially and publicly acknowledged the information it now seeks to protect under Exemption 7(D), thereby rendering that Exemption inapplicable. "A three-part test determines whether an item is officially acknowledged: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." Mobley, 806 F.3d at 583 (quoting Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990)) (internal quotation marks omitted). The plaintiff bears the initial burden of showing that "the specific information" is already "in the public domain by official disclosure." Wolf, 473 F.3d at 378.

Plaintiffs maintain that the IRS has officially acknowledged that there was no confidential informant in this case, so it cannot assert an exemption whose sole purpose is to protect against the disclosure of the identity of a confidential source. Once again, the Court finds that Plaintiffs have not borne their burden. As to the first and second prongs, the Court has explained why the information requested sweeps more broadly than, and does not match, the information previously disclosed. To wit, the whistleblower forms requested may contain substantial information about any persons who have provided information to the IRS or any

9

details those persons may have provided. Of course, the general statements by the IRS in prior litigation that that there was no informant do not match such information and thus are not official acknowledgements of that information.

Plaintiffs rejoin that such information, if it exists, could not implicate Exemption 7(D). See Mot. at 9–10. (To the extent the Court did not directly address this argument in its prior Opinion, id., it does so now.) But they are wrong. The scattered statements in the previous litigation do not rule out the presence of Exemption 7(D)-protected information in the requested records. A brief refresher: Several IRS officials in previous litigation involving partnerships managed by Plaintiff Thomas Montgomery stated that "there had been no whistleblower" and that "there was not . . . an informant who put the Internal Revenue Service on notice" of certain tax conduct. See ECF No. 38, Attach. 2 (Plaintiffs' Statement of Undisputed Material Facts), ¶¶ 34–38. The context of those statements is critical. A number were specific to particular partnerships; several did not address whether there might have been an informant as to Plaintiff Beth Montgomery. See, e.g. ECF No. 13, Attach. 9 (Plaintiffs' Motion for Disclosure in Southgate Litigation) at ECF pp. 25–26; ECF No. 13, Attach. 11 (Gee Deposition and Thurber Testimony) at ECF pp. 5, 26–28. Some were also limited in time — e.g., "And we did not have any informants involved in any of the returns we classified during that week of December, 2005." Thurber Testimony at ECF p. 28.

Plaintiffs have not shown that these statements mean there could be no confidential source whose identity would be compromised if responsive documents were revealed. There may have been such a source during a different time period from that addressed in the statements, yet still within the eight-year period subject to Plaintiffs' requests. See Compl., ¶ 16. Or there may have been a source reporting on conduct or persons outside the scope of that

litigation. Or it is possible that someone might be a confidential source within the meaning of Exemption 7(D) but not have been considered an informant or whistleblower in the investigations that were subject of prior litigation — perhaps because the IRS did not rely upon their information. See Montgomery, 330 F. Supp. 3d at 170–71. Indeed, Thomas Montgomery himself argued that the Government's prior statements left open the question of whether there was a confidential informant. See Southgate Motion for Disclosure at ECF pp. 25–30; see also ECF No. 19 (Opp. to First MSJ), Attach. 1 (Plaintiffs' Statement of Disputed Material facts) at ECF p. 6 (describing IRS statements on informant issue as "immaterial, incomplete, inaccurate, and misleading"). All those possibilities, which Plaintiffs have done little to dispel, demonstrate the Montgomerys have not met their burden of showing that "the specific information" subject to their requests and protected by Exemption 7(D) is "in the public domain by official disclosure." See Wolf, 473 F.3d at 378.

  2. *Estoppel*

Plaintiffs' next argument was that a prior judicial decision collaterally estopped the IRS from now asserting that there might have been a confidential source. Recall that the district court in Bemont Investments, LLC v. United States, 2010 WL 3057437 (E.D. Tex. Aug. 2, 2010), aff'd in part and rev'd in part, 679 F.3d 339 (5th Cir. 2012), stated that "[t]here was no informant [t]here." Id. at *13. This one fails for the same reason the official-acknowledgement argument did: The issue the Bemont court decided does not resolve the question of whether there are responsive records protected by Exemption 7(D). In particular, that court's remark was focused on that litigation during that time period. So even if the court's understanding of the terms "informant" or "whistleblower" mapped onto Exemption 7(D)'s term "confidential

source," which is far from clear, its determination did not address the field of possibilities of such sources as applied to Thomas and Beth Montgomery.

   3. *Exemption 7(D)*

The Montgomerys last contend that the Court's decision is contrary to the terms of FOIA Exemption 7(D), which applies only to "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). They maintain that the decision expands that exemption to persons who provided information without assurances of confidentiality, who may not even be "sources," and whose identities are not at risk of disclosure. See Mot. at 11–15. But the Opinion did nothing of the sort.

Take the issue of confidentiality first. For Exemption 7(D) to apply, the source must have "provided information based upon an express grant of confidentiality or 'in circumstances from which such an assurance could reasonably be inferred.'" Montgomery, 330 F. Supp. 3d at 170 (quoting U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993)). As the Court explained, in the particular circumstances of the Glomar response here, the IRS met this standard. It explained publicly why the records, if they exist, would reveal the identity of a source given either an express or implied grant of confidentiality. See Second MSJ, Attach. 6 (Declaration of Amy Mielke), ¶¶ 8–10. Then it submitted information *in camera* for the Court to confirm that, if responsive documents existed, they in fact implicated such a confidential source. Further explanation of the assurances given to a source, if any, would realize the harm the agency seeks to avoid because it would reveal whether any such source existed. See Montgomery, 330 F. Supp. 3d at 170. Contrary to Plaintiffs' assertion, the IRS thus fully complied with Roth's requirement that "an agency 'publicly explain[] to the extent it can why it

12

has concluded that certain sources provided information under an express or implied assurance of confidentiality.'" Mot. at 14 (quoting Roth, 642 F.3d at 1185).

What about Plaintiffs' argument that Exemption 7(D) does not cover "attempted" sources? See Mot. at 11. The Court's Opinion, for starters, did not depend on the exemption reaching persons who, in Plaintiffs' parlance, merely attempt to become confidential sources. As explained above, notwithstanding the Government's prior statements about informants, any responsive records may well contain information about what Plaintiffs refer to as actual confidential sources. See supra Section III.C.1. The Court notes, however, that the terms of Exemption 7(D) comfortably include persons who provided information to the Government under an assurance of confidentiality where such information was never actually relied upon in a particular investigation or prosecution. To wit, the exemption protects the identity of a "source," a term ordinarily understood to include persons who merely provide information. See American Heritage Dictionary 1674 (5th ed. 2011) (defining source as "one . . . that supplies information"). The upshot is that, either way you understand the exemption, the whistleblower forms Plaintiffs request, if they exist, are likely to contain information from and about protected sources.

The Montgomerys last insist that Exemption 7(D) only protects the identities of confidential sources and thus cannot be invoked to shield from disclosure the existence of a confidential source. See Mot. at 12–14. The Court agrees with the former but disagrees with the latter. As explained, there are some circumstances in which the divulging of the existence of a confidential source will also reveal that source's identity. See Montgomery, 330 F. Supp. 3d at 170–71. Those circumstances, as the IRS explains, obtain here. See Mielke Decl., ¶ 13. The Court's decision thus does not broaden the scope of Exemption 7(D) — it respects it and the harms it is intended to prevent. See FBI v. Abramson, 456 U.S. 615, 630 (1982) (emphasizing

that exemption aims to prevent "potential disruption in the flow of information to law enforcement agencies by individuals who might be deterred from speaking because of the prospect of disclosure").

## IV. Conclusion

For the foregoing reasons, the Court will deny the Motion for Reconsideration. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 10, 2019