UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS MONTGOMERY and
BETH MONTGOMERY,

Plaintiffs,

v.

INTERNAL REVENUE SERVICE,

Defendant.

Civil Action No. 17-918 (JEB)

**MEMORANDUM OPINION**

Plaintiffs Thomas and Beth Montgomery want to know if anyone sent the Internal Revenue Service information about their tax activities. The IRS does not want to give them an answer. Three Opinions and two substantive Orders later, their Freedom of Information Act suit seems hardly closer to a resolution. After previously maintaining that no records were responsive to seven of Plaintiffs' FOIA requests, the IRS currently asserts that it can neither confirm nor deny that any such records exist — in FOIA parlance, a Glomar response. The Montgomerys have now filed a Motion challenging this position, correctly pointing out that the agency has not invoked any particular FOIA exemption to justify its stance. Agreeing with Plaintiffs that the response is deficient in this respect, the Court will grant their Motion.

**I.  Background**

The Court has outlined the facts underlying this lawsuit in several of its past Opinions, leaving little need to go into them in any depth here. See, e.g., Montgomery v. IRS, 292 F. Supp. 3d 391, 393–94 (D.D.C. 2018). It is necessary, however, to address the procedural history in some detail to provide context on how this most recent dispute arose.

1

Back in May 2016, Plaintiffs filed a number of FOIA requests with the IRS, seeking in total twelve different items related to their tax dealings with the Service. (The Court, consistent with its prior Opinions, will refer to these items as requests, even though they were not denominated as such in the administrative process.) The first five sought specific IRS forms, most relating to informant awards and the reporting of tax fraud and abuse. See ECF No. 1 (Complaint), ¶ 16(1)–(5). Requests 6–12 sought a broader set of documents that the IRS may have received or prepared in connection with third parties concerning the Montgomerys and their tax litigation with the IRS. Id., ¶ 16(6)–(12). The agency refused to confirm or deny the existence of documents responsive to the first five — invoking FOIA Exemption 7(D) — but averred that it had found "no documents specifically responsive to . . . items 6 through 12." Compl., Exh. E (FOIA Response) at 2; see also ECF No. 31-4 (Declaration of Patricia Williams), ¶ 16. Dissatisfied with these responses, the Montgomerys filed suit.

After Plaintiffs dodged several procedural roadblocks, see Montgomery, 292 F. Supp. 3d at 393, both parties moved for summary judgment. The Court upheld the Service's Glomar response to Requests 1–5, finding that disclosure of the existence (or non-existence) of responsive records was reasonably likely to compromise the IRS's efforts to protect "the identit[ies] of [] confidential source[s]," thereby realizing the harms that Exemption 7(D) was drafted to address. See Montgomery v. IRS, 330 F. Supp. 3d 161, 170 (D.D.C. 2018) (quoting 5 U.S.C. § 552(b)(7)(D)). Consistent with the IRS's supporting declarations and summary-judgment motion, the Court's analysis focused on the IRS forms subject to requests 1–5 and whether they implicated that exemption. The Court's consideration of requests 6–12, conversely, took an entirely different form. As to those, Plaintiffs had challenged only the adequacy of the search. (From their perspective, there was presumably nothing else to challenge,

since the Service had stated that it had found no responsive documents.) While the Court largely upheld the search, it found that the IRS had not reasonably explained why the Whistleblower Office would not have responsive records. Id. at 172. It therefore ordered the agency to "renew its search or aver that its prior searches" sufficiently covered responsive documents accessible through any "IRS Whistleblower Office Databases." Id. The Court also found that the Service had not adequately searched certain litigation files involving the Montgomerys; any outstanding questions relating to that search are not at issue here. Id.

The IRS subsequently filed a declaration stating that it did not need to renew any search of the Whistleblower Office because that office would not have "records responsive to Items 6–12" that are "unrelated to a whistleblower." See ECF No. 54 (Declaration of Cindy M. Stuart), ¶ 14. The Court found that response lacking and ordered the agency to "search the Whistleblower Office for [any] records responsive to Plaintiffs' FOIA Requests 6–12 and produce the results to Plaintiffs, or explain why that office is not reasonably likely to possess such records." ECF No. 62 (Order on Motion Challenging Search) at 3. In response, the IRS submitted an *in camera* declaration explaining its position. See ECF No. 68. After reviewing the declaration and concluding that it contained substantial information that would not compromise the IRS's previous Glomar position, the Court ordered Government personnel to file a redacted copy on the public docket, stating, "(1) That they have adequately searched the Whistleblower Office for responsive documents, including those that may be related to a whistleblower; and (2) Either the result of the search, or that they are asserting Glomar with respect to any potentially responsive documents." ECF No. 69 (Order on Hebb Declaration).

The Service filed its redacted declaration on April 10, 2019, asserting for the first time that it would neither confirm nor deny the existence of responsive records in the Whistleblower

3

Office. See ECF No. 71-1 (Redacted Declaration of Joseph Hebb), ¶ 27(e). Plaintiffs thereafter filed a Motion contesting the IRS's Glomar position; their Motion also continues to dispute the adequacy of the search and argues that certain redacted or *in camera* declarations should be made public. See ECF No. 73 (Motion).

## II.     Legal Standard

Plaintiffs' Motion challenges whether the Government has satisfied its FOIA obligations in accord with this Court's prior Opinions and Orders on cross-motions for summary judgment. As the parties' extant dispute is an offshoot of summary-judgment briefing, those standards apply. In that regard, recall that FOIA cases are typically and appropriately decided at the summary-judgment phase, and the agency bears the ultimate burden of proof. See Summers v. Dep't of Justice, 140 F.3d 1077, 1079–81 (D.C. Cir. 1998). The Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    Analysis

In their Motion, the Montgomerys (1) challenge the propriety of the Service's Glomar response, (2) dispute the adequacy of the agency's search, and (3) insist that certain *in camera* submissions be made public. Agreeing with Plaintiffs on the first point, the Court will defer resolution of the latter two issues in the (perhaps naïve) hope that the Government's subsequent response will settle them.

4

After a long back and forth over the agency's search for records responsive to Plaintiffs' FOIA Requests 6–12, the Service has finally issued a Glomar response. See ECF No. 74 (Opp.) at 1 (citing Redacted Hebb Decl., ¶ 27(e)). For the unfamiliar reader, a Glomar response is a refusal to confirm or deny the existence of responsive records; it is appropriate "only when confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" ACLU v. CIA, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). The agency must, accordingly, "tether its refusal to respond to one of the nine FOIA Exemptions." Montgomery, 330 F. Supp. 3d at 168 (citation omitted and formatting modified). Plaintiffs contend that the IRS's Glomar response falls short in this respect because it "has failed to assert any specific FOIA exemption to support the withholding of such information." Mot. at 3. They are correct: nowhere in the Hebb Declaration or in the Service's briefing does it explain which FOIA exemption justifies the invocation of Glomar. The IRS has thus not borne its burden of establishing that Glomar applies to the records subject to FOIA Requests 6–12.

The agency, indeed, hardly defends its approach in its Opposition, stating only that the Service's response complies with the Court's April 3, 2019, Order requiring it either to disclose the results of its search or assert Glomar. See Opp. at 7. But in giving Defendant those options, the Court was not preemptively sanctioning any Glomar response; it was, instead, explaining the scope of the agency's options under FOIA, which it had not yet lived up to. The IRS's obligation to justify its Glomar response thus remains.

Perhaps the Government seeks to rely on the justifications it gave for its Glomar response to Plaintiffs' FOIA Requests 1–5, including its assertion of Exemption 7(D). See ECF No. 31-6 (Declaration of Amy Mielke), ¶¶ 10–21. If that is so, however, it needs to say as much. Indeed,

it may need to say more. FOIA Requests 6–12 appear on their face broader than 1–5, encompassing not just whistleblower forms but all communications between third parties and the Service related to the Montgomerys, among other things. See Compl., ¶ 16. To the extent it relies on Exemption 7(D) to justify a Glomar response to these requests as a whole, it must explain why disclosing the existence (or non-existence) of records of third-party communications with the Whistleblower Office would compromise the identity of confidential sources, which will presumably require them to show, among other things, that such third parties satisfy the criteria set out in Roth v. Department of Justice, 642 F.3d 1161, 1184 (D.C. Cir. 2011).

While the Court has (again) found that the agency's responses fall short, it notes that it can discern a different, perhaps more coherent, rationale for the course the IRS has taken in this litigation. One might read the Service's declarations and subsequent briefing to suggest the following stance: (1) The existence of any responsive information to FOIA Requests 1–5 would implicate a particular exemption, rendering a Glomar response appropriate as to those requests in their entirety; and (2) There is no non-whistleblower information responsive to FOIA Requests 6–12, and the existence of any whistleblower-related information is protected by a particular exemption, making a Glomar response as to such information appropriate. As a general matter, there is nothing legally deficient about this approach. Indeed, the court in PETA v. NIH, 745 F.3d 535 (D.C. Cir. 2014), explicitly encouraged agencies to respond to broad FOIA requests by ruling out (or in) the existence of categories of responsive records that would not implicate an exemption while issuing Glomar as to only the narrow category of records that would. Id. at 545.

But for three reasons, the Court is not prepared to uphold the agency's actions on such grounds today. First, it has not clearly explained that it is taking the position the Court just

6

described.  Second, it has never adequately justified its Glomar response as to whistleblower-related records potentially responsive to FOIA Requests 6–12; if it wants to invoke Glomar as to only "whistleblower-related documents," it must explain publicly how it crafted such a category and why the category encompasses only documents that implicate an exemption.  That is so even if the Service relies on Exemption 7(D) because, as the Court stated previously, "[N]ot all records broadly related to a whistleblower should necessarily be 'expected to disclose the identity of a confidential source.'"  Order on Motion Challenging Search at 2 (quoting 5 U.S.C. § 552(b)(7)(D)) (emphasis added).  Under such circumstances, the agency is also required to state *in camera* "either 1) that records do exist and that it either has given an express grant of confidentiality or satisfied the Roth factors to show an implicit grant; or 2) that no documents exist."  Montgomery, 330 F. Supp. 3d at 171.  Third, the agency has not satisfactorily explained how its partial Glomar response to Requests 6–12 coheres with its response during the administrative process that it had "found no documents specifically responsive . . . to items 6 through 12."  FOIA Response at 2; see also Compl., Exh. H (FOIA Appeal) at 3 ("We are satisfied that a reasonable search for records was performed and that no records were located which are responsive to your request.").  The footnote in the Service's Opposition on this issue is, to put it generously, opaque.  See Opp. at 8 n.6.  This inconsistency, furthermore, may well be distinct from equivocations in the administrative process about records responsive to requests 1–5, which the Court has found did not amount to an official acknowledgement.  See Montgomery, 330 F. Supp. 3d at 169.  The bottom line is that the IRS has not met its "burden of justifying the applicability of [a] FOIA exemption" to support its Glomar response.  Mobley v. CIA, 806 F.3d 568, 580 (D.C. Cir. 2015).

**IV.     Conclusion**

7

For the foregoing reasons, the Court will grant in part Plaintiffs' Motion Challenging Defendant's Response.  A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 8, 2019