# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS MONTGOMERY and BETH MONGOMERY, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, <br><br> Defendant. | Civil Action No. 17-918 (JEB) |

## MEMORANDUM OPINION

This Freedom of Information Act dispute represents the latest round in Plaintiffs Thomas and Beth Montgomery's never-ending heavyweight bout with the Internal Revenue Service over their multi-billion-dollar tax-shelter scheme. After settling various financial disputes with the agency, Plaintiffs submitted FOIA requests to Defendant in order to discern whether a whistleblower had incited the agency's investigation. The Service's responses, however, did not bring Plaintiffs any closer to discovering the source of their woes. Frustrated in their pursuit of this information, they filed suit in this Court.

In response to the previous round of summary-judgment motions, the Court held that Defendant had appropriately invoked Glomar with respect to one category of Plaintiffs' requests but had failed to conduct an adequate search as to the other. History repeats itself here in regard to the current dispositive Motions. Once again, Defendant has justified its invocation of Glomar as to certain potential documents, but it has otherwise not conducted an adequate search. The Court will therefore grant in part and deny in part the parties' Motions for Summary Judgment and direct the IRS to renew its search.

1

**I.	Background**

    A.	Factual History

The Court has recounted the facts surrounding this prolonged tax saga in several of its prior Opinions, but it will provide a brief recap here. See, e.g., Montgomery v. IRS, 292 F. Supp. 3d 391, 393–94 (D.D.C. 2018). In the early 2000s, Plaintiff Thomas Montgomery helped form several partnerships that were structured so as to facilitate the reporting of tax losses without those entities' experiencing any real economic loss. Id. at 393. These "tax-friendly investment vehicles" allowed Thomas and his wife Beth, filing jointly, to report the entities' alleged losses as part of their individual tax returns. Id. (alteration omitted). In other words, Plaintiffs were able to enjoy the tax benefits of experiencing an investment loss without shouldering the consequent burdens of such a loss. Somehow — and the Montgomerys are determined to learn exactly how — the IRS caught wind of their use of these vehicles, setting into motion over a decade of litigation on the issue.

After examining the structure of the partnerships, the IRS issued "final partnership administrative adjustments" (FPAAs) as to two of them, which resulted in the agency's imposing certain penalties and disallowing some of the losses the Montgomerys had claimed on their individual returns. Id. at 393–94. Next, the partnerships sued the Service in several separate actions, seeking a readjustment of the FPAAs (for those keeping score at home, this would amount to a readjustment of the adjustments). See Bemont Invs., LLC v. United States, 679 F.3d 339 (5th Cir. 2012); Southgate Master Fund, LLC v. United States, 659 F.3d 466, 475 (5th Cir. 2011). Ultimately, the Fifth Circuit affirmed the IRS's determination that the partnerships had substantially understated their taxable incomes, Bemont, 679 F.3d at 346, but held that one transaction by the Southgate partnership had a legitimate investment purpose. Southgate, 659

F.3d at 483.  With these mixed verdicts in hand, the Montgomerys and the partnerships pursued thirteen separate suits against the IRS, seeking, *inter alia*, a refund of assessed taxes and penalties.  Montgomery, 292 F. Supp. 3d at 394.  The cases were ultimately consolidated, and the parties reached a global settlement agreement in November 2014 that entitled the Montgomerys to more than $485,000.  Id.

    B.  Procedural History

Having settled or litigated this multitude of cases involving either the Montgomerys or the partnerships, "the IRS thought it was at last clear of Plaintiffs."  Id.  Not so.  With the battles over their debt to the Treasury completed, Plaintiffs turned their attention to discovering the source of this tax reckoning.  They hoped that answers would lie within the agency itself and thus requested twelve types of records from Defendant via FOIA.  Requests 1-5 sought various IRS forms used in connection with a confidential informant; Requests 6-12 sought lists, documents, or correspondence between the IRS and any third party regarding Plaintiffs' potential tax liability or partnership transactions.  See ECF No. 1 (Complaint), ¶ 16.  The agency initially attested that it had not found any documents responsive to Requests 6-12, and it claimed that FOIA Exemption 7(D) "exempts the disclosure of records" sought in Requests 1-5.  Id., Exh. E at 2.  After the denial of their administrative appeal, id., Exh. H at 3, Plaintiffs filed this action on May 16, 2017.

Several rounds of summary-judgment motions ensued.  The IRS first so moved on procedural grounds, but this Court disagreed with the agency's position, holding that Plaintiffs' suit was not precluded by the settlement agreement, issue preclusion, or *res judicata*.  See Montgomery, 292 F. Supp. 3d at 397–98.  The parties next proceeded to briefing the merits.  While the IRS had not clearly done so previously, it tendered a so-called Glomar response —

3

refusing to confirm or deny the existence of any responsive records — as to Requests 1-5 (forms used in connection with a confidential informant), claiming that the existence or non-existence of such records was exempt from disclosure under FOIA Exemptions 7(D), 7(E), and 3. See Montgomery v. IRS, 330 F. Supp. 3d 161, 167 (D.D.C. 2018). Regarding the second group (lists, documents, or correspondence between Defendant and any third party regarding Plaintiffs' tax liability), the agency continued to aver that it had conducted an adequate search and had not found responsive records. Id. at 166–67.

Plaintiffs challenged both positions. Concerning search adequacy, they argued that the IRS's failure to look in certain obvious repositories — its (1) Criminal Investigation Management Information System; (2) Whistleblower Office; and (3) litigation files from the Bemont and Southgate cases (the two Texas actions recounted above that reached the Fifth Circuit) — revealed the inadequacy of its search. Id. at 172; see also ECF No. 40 (Pl. Opp.) at 36.

The "Court rendered a mixed verdict, siding with Defendant as to [Requests 1-5,] and with Plaintiffs as to the others." Montgomery v. IRS, 356 F. Supp. 3d 74, 78 (D.D.C. 2019) (denying motion for reconsideration). It agreed with the Service that the Glomar response was appropriate regarding the former set, but it required the IRS to conduct a further search for the latter group of requested documents. Id. More precisely, the Court held that the IRS's inability to justify its failure to search (1) the Whistleblower Office databases and (2) the Bemont and Southgate litigation files raised questions as to whether its prior search had been adequate. Montgomery, 330 F. Supp. 3d at 171–72. The Court therefore directed Defendant to "renew its search [for Requests 6-12] or aver that its prior searches had been 'reasonably calculated to

4

uncover all relevant documents.'" Id. at 172 (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Another turn of the hamster wheel followed. The parties filed a joint status report attesting to their mutual understanding that, as to Requests 6-12, the Government would have to either renew its search or submit further affidavits averring that its prior searches were "reasonably calculated to uncover all relevant documents." ECF No. 52 (Joint Status Rep. of Sept. 25, 2018) at 2. Defendant ultimately opted to renew its search. See ECF No. 55 (Def. Status Rep. of Oct. 16, 2018). Its examination of the Bemont and Southgate litigation files yielded 1,035 pages of responsive records, all of which it released to Plaintiffs though partially redacting 25 of them under FOIA Exemptions 3 and 5. See ECF No. 81 (Def. MSJ), Exh. 2 (Affidavit of Amy Mielke), ¶¶ 63–64, 71. The redactions are not challenged here.

With regard to the Whistleblower Office, the agency first declared that it did not need to renew a search of that repository "because that office would not have 'records responsive to Items 6-12' that are 'unrelated to' a whistleblower." Montgomery v. IRS, No. 17-918, 2019 WL 2930038, at *2 (D.D.C. July 8, 2019) (quoting ECF No. 54). The Court "found that response lacking," and it ordered the agency to either renew its search of the Whistleblower Office or satisfactorily justify declining to do so. Id. The IRS next filed a declaration — which this Court ordered redacted and released — that offered a blanket Glomar response refusing to confirm or deny the existence of any responsive documents in the Whistleblower Office databases. Id. Plaintiffs filed a motion challenging that Glomar response, and the Court agreed that the agency had again fallen short, in part because it had failed to tether its position to a particular FOIA exemption. Id. at *2–3.

5

In response to this rebuff, the agency submitted a memorandum accompanied by the *in camera* declaration of Amy Mielke, an attorney in Defendant's Office of Chief Counsel. See ECF No. 83 (Def. Whistleblower Memo) at 1. The memorandum "invokes Glomar," but only "with respect to any record responsive to [Requests] 1-5 that is construed as also responsive to [Requests] 6-12." Id. Put differently, the IRS now states that after "conduct[ing] a reasonable search of its Whistleblower Office," it has not discovered any "records responsive to [Requests] 6-12, but not within the IRS' Glomar response [as to Requests 1-5]." ECF No. 89 (Def. Opp. to Pl. Whistleblower MSJ) at 9. In invoking Glomar, the agency relies on FOIA Exemptions 7(D), 7(E), and 3. See Whistleblower Memo at 2. With these latest rounds complete, the parties have again filed Cross-Motions for Summary Judgment respecting the IRS's renewed search.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe that evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011) (same). In these cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly

6

withheld any records. See Defs. of Wildlife, 623 F. Supp. 2d at 88, 91; see also Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (same). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.     Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." U.S. Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). The Act promotes these aims by providing that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . .[,] shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

In moving for summary judgment, Defendant argues that it has discharged its responsibilities under FOIA by conducting an adequate search in response to Plaintiffs' requests and in disclosing all responsive, non-exempt documents. Plaintiffs counter that the Service's renewed search was insufficient in several respects, most notably because it failed to search other potentially responsive databases beyond the litigation files. They also challenge the IRS's

7

Whistleblower Office Memorandum. The Court will start with the litigation files and then move to the Whistleblower Office.

A. Bemont and Southgate Litigation Files

With regard to the adequacy of its search, an agency "fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. "[T]he agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (omission in original) (quoting Valencia-Lucena, 180 F.3d at 326).

In tackling the search-adequacy question, the parties dispute the scope of the mandate imposed by this Court in its prior Opinion. According to Plaintiffs, the IRS's search obligations included but were not limited to a search of the litigation files. See ECF No. 82 (Pl. Opp. on Litigation Files) at 5. The litigation-file databases, they argue, were merely an example of the sort of place the agency should have searched in the first instance, but Defendant should have also explored other locations for potentially responsive documents, such as the Office of Tax Shelter Analysis. Id. at 6. The IRS responds that it understood its obligation to be solely the

8

conducting of a renewed search of the litigation files, which it has now discharged. See ECF No. 81 (Def. MSJ on Litigation Files) at 12.

Plaintiffs have the better of this argument. To be sure, "[t]here is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents likely are maintained." Cleveland v. U.S. Dep't of State, 128 F. Supp. 3d 284, 292 (D.D.C. 2015). The Government thus might have ultimately opted to search only the litigation files instead of broadening its search to, say, the Office of Tax Shelter Analysis. The agency, however, "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Oglesby, 920 F.2d at 68.

Defendant's submissions here leave the Court uncertain as to whether there are other potentially relevant databases, rendering summary judgment inappropriate. First, the IRS has yet again failed to provide an "assertion that [Defendant] searched all locations likely to contain responsive documents." Bartko v. DOJ, 167 F. Supp. 3d 55, 64 (D.D.C. 2016); see also Oglesby, 920 F.2d at 68 ("At the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents."); New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigration & Customs Enf't, 373 F. Supp. 3d 16, 37 (D.D.C. 2019) (summary judgment precluded where agency failed to invoke "magic words" that it had searched all systems reasonably likely to produce responsive documents). It is difficult for the Court to conclude that Defendant has satisfied its search obligations under FOIA when it has not even claimed to have done so.

Instead, the agency has proceeded in piecemeal fashion to search one database at a time, without ever commenting on whether other locations might contain responsive documents. See

9

ECF No. 31-4 (Declaration of Patricia Williams) (describing agency's first search of Integrated Data Retrieval Service but declining to state whether agency had searched all locations likely to contain responsive documents); ECF No. 84-1 (Declaration of Amy Mielke) (describing agency's search of litigation files but not commenting as to possibility of other search locations). This tunnel vision has recurred despite the fact that the Court's prior Opinion directed the Service to "at the very least . . . explain in its affidavit that no other record system was likely to produce responsive documents." Montgomery, 330 F. Supp. 3d at 172 (alteration omitted) (quoting Oglesby, 920 F.2d at 68).

Beyond the agency's failure to invoke the "magic words," Plaintiffs have provided "countervailing evidence" as to the inadequacy of the search at issue here. Iturralde, 315 F.3d at 314. Specifically, they point to a location — the Office of Tax Shelter Analysis — that would seem to be a natural location for responsive documents. The agency, for its part, has not even offered an argument as to why it did not search OTSA beyond noting its general objection to conducting a renewed search of broader scope. While Plaintiffs' failure to mention this repository previously weighs slightly against mandating a further search, the burden is ultimately on the Government to demonstrate the adequacy of its search, not on Plaintiffs to learn the intricacies of a complex bureaucracy and then consistently suggest, in advance, the best locations to search.

The agency's renewed search, moreover, resulted in "positive indications of overlooked materials." Valencia-Lucena, 180 F.3d at 326 (quoting Founding Church of Scientology v. NSA, 610 F.2d 824, 837 (D.C. Cir. 1979)). The search of the litigation files uncovered over 1,000 pages of responsive documents. Even if an agency "start[s] with [a] reasonable assumption that only . . . [searching certain locations] would be necessary," "it must revise its assessment of what

10

is 'reasonable' in a particular case to account for leads that emerge during its inquiry." New Orleans Workers' Ctr., 373 F. Supp. 3d at 36 (quoting Campbell v. DOJ, 164 F.3d 20, 28 (D.C. Cir. 1998)). Perhaps the revelation of a trove of over 1,000 pages of responsive documents upon searching just one additional database should have caused the agency to "revise its assessment." Perhaps not. The agency, however, did not explain its reasoning, instead deciding *sua sponte* that it would only search databases mentioned by this Court in its prior Opinion.

These aspects of the agency's response leave "substantial doubt" as to the adequacy of its search, foreclosing summary judgment. See Beltranena v. Clinton, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting Truitt, 897 F.2d at 542). The Court thus directs Defendant to either renew its search or provide additional affidavits in accordance with this Opinion. Because the Court finds for Plaintiffs as to search adequacy, it declines to reach their other arguments on this issue — *e.g.*, that the agency's failure to locate certain documents "known to exist" and its purported inability to search certain administrative files associated with the Bemont and Southgate cases demonstrate the inadequacy of its search.

B. Whistleblower Office

Plaintiffs also challenge Defendant's search of IRS Whistleblower Office databases, specifically its reliance on Glomar. As noted above, in response to the Court's latest Opinion, the IRS submitted a Memorandum accompanied by an *in camera* supplemental declaration explaining its position that the agency had conducted an adequate search of the Whistleblower Office and its partial invocation of Glomar. See ECF No. 71-1 (Declaration of Joseph Hebb), ¶ 16. Defendant did not produce any documents, instead "invok[ing] Glomar with respect to [Requests] 6-12, but only with respect to any record responsive to [Requests] 1-5 that is construed as also responsive to [Requests] 6-12." ECF No. 83 (Def. Whistleblower Memo) at 1.

11

In other words, to the extent that there might be overlap between documents concerning a confidential informant (Requests 1-5) and documents concerning the agency and a third party regarding Plaintiffs (Requests 6-12), the agency offered a <u>Glomar</u> response, while stating that there were no responsive documents to Requests 6-12 "not within the IRS' <u>Glomar</u> response." ECF No. 89 (Def. Opp. to Whistleblower Memo) at 9.

After reviewing the Memorandum and the agency's *in camera* declaration, the Court is finally satisfied as to its search of the Whistleblower Office and its reliance on <u>Glomar</u>. The Court previously rejected the IRS's position on this issue because of three deficiencies in its submissions, all of which the agency has satisfactorily remedied here.

First, Defendant has finally "tethered" its <u>Glomar</u> response to an applicable FOIA exemption. <u>Montgomery</u>, 2019 WL 2930038, at *2. A <u>Glomar</u> response is appropriate when "'confirming or denying the existence of records would' <u>itself</u> reveal protected information." <u>Bartko v. DOJ</u>, 62 F. Supp. 3d 134, 141 (D.D.C. 2014) (quoting <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 893 (D.C. Cir. 1995)). The agency must, however, "tether its refusal to respond . . . to one of the nine FOIA exemptions." <u>Montgomery</u>, 330 F. Supp. 3d at 168 (quoting <u>Wilner v. NSA</u>, 592 F.3d 60, 68 (2d Cir. 2009)). Defendant has now satisfied that obligation, relying on FOIA Exemptions 3, 7(D), and 7(E) and offering declarations in support of that reliance.

Second, the IRS has followed the Court's directive by explaining and justifying its reliance on Exemption 7(D). This exemption excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis." 5 U.S.C §

12

552(b)(7)(D). "The exemption is thus properly invoked only where a source provided information based upon an express grant of confidentiality or 'in circumstances from which such an assurance could reasonably be inferred.'" Montgomery, 330 F. Supp. 3d at 170 (quoting DOJ v. Landano, 508 U.S. 165, 172 (1993)).

Defendant has justified its reliance on 7(D) with regard to its search of the Whistleblower Office, providing a public memorandum and an *in camera* declaration explaining that dependence in detail. Much of the agency's justification for invoking Glomar for documents responsive to Requests 1-5 was accepted and explained by this Court in its prior Opinion:

> [E]ven though the identity of an informant may not be at risk in every case, to protect whistleblowers in cases where disclosure of the existence of records could lead to their identification, it must assert Glomar whenever an informant is involved.
>
> For example, in a situation where there is only one suspected whistleblower, the Service's affirmative or negative response to a request for certain forms would either confirm or refute the suspicion. [If] the documents exist . . . the identity of the informant could be apparent even if the IRS does not release anything . . . .
>
> If the IRS does not consistently invoke Glomar, requesters will soon be able to determine when [it] is protecting records and when there are no records to protect. A savvy requester could then determine whether a confidential informant exists, which in some cases could result in the disclosure of the identity of the confidential informant. Defendant's *in camera* submissions thus must state either 1) that records do exist and that it either has given an express grant of confidentiality or satisfied the Roth factors to show an implicit grant; or 2) that no documents exist.

Id. at 170–71 (internal quotation marks omitted).

Given that the agency is only invoking Glomar for those documents deemed responsive to Requests 6-12 and 1-5, it offers similar justifications here for the propriety of its Glomar response, albeit with more information specific to the Whistleblower Office. The Court finds these submissions sufficient, and, indeed, the D.C. Circuit has encouraged reliance on this sort of

13

"narrowed" Glomar response for a subset of responsive documents, as opposed to a blanket response that would cover all documents responsive to Requests 1-6. See People for the Ethical Treatment of Animals v. Nat'l Institutes of Health, 745 F.3d 535, 545 (D.C. Cir. 2014). The Court acknowledges, however, that because the agency largely justifies its search via *in camera* submissions, Plaintiffs have been substantially left in the dark as to its analysis. Given the fact that the *in camera* declaration contains "substantial information that would not compromise the IRS's previous Glomar position," the Court therefore orders the Government to file a redacted copy on the public docket. See Montgomery, 2019 WL 2930038, at *2.

Finally, the Court rejects Plaintiffs' argument that the agency cannot invoke Glomar here because Defendant has already "officially acknowledged" that there are no records responsive to Requests 6-12. See Compl., Exh. E (FOIA Response) at 2 (stating that IRS "found no documents specifically responsive . . . to [Requests] 6 through 12"); id., Exh H (FOIA Appeal) at 2 (same). A plaintiff "can overcome a Glomar response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records"; to do so he must "point[ ] to specific information in the public domain that appears to duplicate that being withheld." ACLU v. CIA, 710 F.3d 422, 426-27 (D.C. Cir. 2013) (citation omitted). "A general or vague acknowledgment is not enough; rather, the plaintiff must 'pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency.'" Montgomery, 330 F. Supp. 3d at 169 (quoting Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011)).

Plaintiffs' argument is odd in several respects. First, the administrative response only describes the search as of that time (August 2016), at which point Defendant may not have even searched the Whistleblower Office databases. At this Court's direction, the agency has

repeatedly renewed and expanded its search since its original response to Plaintiffs' request.  At first it may not have found any documents responsive to Requests 6-12, but it has now located over 1,000.  Plaintiffs cannot credibly argue that Defendant has acknowledged that there are no documents specifically responsive to Requests 6-12 when it has disclosed over 1,000 of them.

Second, the agency's partial Glomar response is not even inconsistent with its previous responses.  It states, as it did before, that its search of the Whistleblower Office has failed to yield documents "specifically responsive" to Requests 6-12, and it only invokes Glomar to the extent that Requests 6-12 overlap with Requests 1-5.  While the agency did not invoke Glomar at all with regard to Requests 6-12 previously, as Defendant explains, it simply may not have considered the overlap between the two categories.  In sum, the IRS's vague "equivocation[ ] in the administrative process" does not amount to official acknowledgment.  Montgomery, 2019 WL 2930038, at *3.

## IV. Conclusion

For these reasons, the Court will deny Defendant's Motion for Partial Summary Judgment; it will grant in part and deny in part Plaintiffs' Motion for Partial Summary Judgment; and it will deny Plaintiffs' Motion Challenging Defendant's Whistleblower Memorandum.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 25, 2020